UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY | CIVIL ACTION |
| Plaintiffs, | 24-CV-6546 |
| -against- | COMPLAINT |
| MATRIX HEALTH CORP D/B/A LIBERTY CHEMISTS, SARAH ZAFARANI, JOHN DOES 1 THROUGH 5, AND ABC CORPORATIONS 1 THROUGH 5, | (JURY TRIAL DEMANDED) |
| Defendants. | |

Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company (interchangeably referred to herein as "Plaintiffs" and "Allstate"), by their attorneys Manning & Kass, Ellrod, Ramirez, Trester LLP, for their Complaint against Defendants Matrix Health Corp d/b/a Liberty Chemists ("Liberty Chemists"), Sarah Zafarani ("Zafarani") (Zafarani and Liberty Chemists are collectively referred to as "Pharmacy Defendants"), John Does 1 through 5, and ABC Corporations 1 through 5 (collectively, "Defendants") allege as follows:

## PRELIMINARY STATEMENT

1.     From at least 2021 and continuing through the filing of this Complaint, Defendants engaged in a massive scheme to defraud Plaintiffs, through the exploitation of New York's Comprehensive Motor Vehicle Insurance Reparations Act (popularly known as the "No-fault Law").

2.     Pursuant to the No-fault Law, policyholders and others who suffer injuries in automobile accidents ("Covered Persons") can obtain payments from the policyholders' automobile insurance companies, including Plaintiffs, for necessary medical care ordered by the

Covered Persons' physicians or prescribing providers. Covered Persons are also permitted to assign those benefits to doctors and other licensed healthcare providers, including pharmacies, enabling them to bill insurance companies directly for their services.

3.     This action seeks to recover more than $88,000.00 that Defendants stole from Plaintiffs, and other economic injuries suffered by Allstate which flowed directly from the submission of hundreds of false and/or fraudulent insurance claims, seeking reimbursement for specifically-targeted, medically unnecessary "pain relieving" pharmaceutical products, including topical pain patches.

4.     As part of the scheme to defraud alleged herein, the Pharmacy Defendants entered into illegal kickback arrangements with No-fault clinics in the New York metropolitan area (the "Prescribing No-fault Clinics" or "No-fault Clinics") and unlicensed laypersons who work at or are associated with the No-fault Clinics ("Clinic Controllers") pursuant to which the No-fault Clinics prescribed expensive, topical pain patches dispensed and billed in exorbitant prices by Liberty Chemists, including, Lidocaine 4.5%-Menthol 5% transdermal pain patches, at times prescribed and/or dispensed under the brand name Lidothol (the "Lidothol Patches").  Pursuant to the illegal kickback arrangements, these medications were routinely prescribed to Covered Persons, rather than commercially available and more affordable over-the-counter medications that have been approved by the FDA. Liberty Chemists targeted the Lidothol Patches rather than the cheaper over-the-counter alternatives for no other purpose than to submit fraudulent, inflated bills to Plaintiffs for reimbursement, exploiting the Covered Persons for financial gain, without regard to genuine patient care.

5.     In furtherance of Defendants' scheme to defraud, Covered Persons who were purportedly involved in automobile accidents would present to the Prescribing No-fault Clinics

where they would, as a matter of pattern, practice and protocol, be prescribed certain medications specifically targeted for their high profit margins, including Lidothol Patches, irrespective of medical necessity.

6.      The prescriptions, which were issued by Prescribing No-fault Clinics and sent to Liberty Chemists for dispensing and billing, were, at times, tailored to boilerplate, pre-printed examination reports designed to limit the prescribing providers' prescriptions to a predetermined treatment protocol, and justify continued, voluminous, and excessive use of prescribed pharmaceuticals, including the Lidothol Patches.

7.      To effectuate the scheme and maximize profits, the Pharmacy Defendants dispensed a handful of specific pain medications, including the Lidothol Patches, based solely on the medications' exorbitant pricing and high profit margins.  In exchange for kickbacks and financial incentives and pursuant to collusive, illegal arrangements, Defendants induced the Prescribing No-fault Clinics, Clinic Controllers, and prescribing providers to prescribe these targeted, exorbitantly priced pain medications, including the Lidothol Patches, without regard to genuine patient care, and directed large volumes of these prescriptions to Liberty Chemists.

8.      Once the Lidothol Patches were prescribed, if they were dispensed at all, the pharmaceuticals were either given to Covered Persons directly at the Prescribing No-fault Clinics or mailed to the Covered Persons from Liberty Chemists.  Covered Persons were not given any choice as to where their prescriptions would be filled.

9.      When the Pharmacy Defendants purported to provide the Lidothol Patches to Covered Persons covered by Plaintiffs, Liberty Chemists sought reimbursement directly from Plaintiffs pursuant to executed "Assignment of Benefit" ("AOB") forms and New York State

Department of Insurance claim form ("NF-3"), often with additional forms listing each billed-for pharmaceutical by its national drug code ("NDC")[1] number.

10.     The Pharmacy Defendants also never submitted wholesale purchase invoices to Plaintiffs demonstrating the NDC number for the pharmaceuticals Liberty Chemists obtained and how much Liberty Chemists actually paid the suppliers for these pharmaceuticals, or whether Liberty Chemists actually purchased the pharmaceuticals with the NDC numbers listed in the billing submissions.

11.     At all relevant times mentioned herein, nearly each and every bill mailed to Plaintiffs by Zafarani through Liberty Chemists sought reimbursement for Lidothol Patches that the Pharmacy Defendants could readily buy at a low cost and bill to Plaintiffs at inflated amounts based on egregiously high wholesale prices.  Defendants steered the Prescribing No-fault Clinics and prescribing providers to prescribe these pharmaceuticals specifically because of their high profit margins, irrespective of medical necessity, pharmacological outcome, or genuine patient care and despite the availability of cheaper over-the-counter and FDA-approved medications.

12.     On information and belief, by entering into kickback arrangements with the Prescribing No-fault Clinics for Lidothol Patches and by dispensing these Lidothol Patches irrespective of medical necessity pursuant to bogus prescriptions, Defendants engaged in conduct which demonstrated a blatant disregard for the laws of New York State which govern the proper operation of a pharmacy and the proper dispensing of drug products, as well as laws which prohibit illegal fee splitting and the solicitation of patients.

---

[1] A National Drug Code ("NDC") number is a unique 10-digit code that identifies each prescription drug product (whether brand name or generic) by the drug itself, the vendor of the drug and the quantity in which the drug was packaged.

13.     By way of example and not limitation, New York Education Law § 6509-a, prohibits a professional licensee, such as a pharmacy, from directly or indirectly requesting, receiving, or participating in the division, transference, assignment, rebate, splitting, or refunding of a fee in connection with professional care or services including services related to drugs and/or medications, and 8 N.Y.C.R.R. § 29.1(b)(3) prohibits a professional licensee, such as a pharmacy from directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.

14.     In addition, the Official Compilation of Codes, Rules and Regulations of the State of New York governing Official Prescriptions, Section 910.2(f), states that an order purporting to be a prescription that is not issued for legitimate medical purposes is not a prescription within the meaning of the New York State Education Law and the New York State Public Health Law and the person knowingly dispensing such an order, as well as the person issuing such order, shall be subject to all penalties provided in law or regulations.

15.     The scheme to defraud orchestrated by the Pharmacy Defendants by which they routinely dispensed the Lidothol Patches without regard to medical necessity, not only demonstrated a deliberate disregard for the laws of New York State in furtherance of theft from Plaintiffs, but also posed a significant risk to the health of patients.

16.     Zafarani, through Liberty Chemists, fraudulently submitted, or caused to be submitted, bills to Plaintiffs for Lidothol Patches that were provided to Covered Persons (i) pursuant to an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of

pharmaceuticals; and/or (iv) were the product of illegal and/or invalid prescriptions issued pursuant to collusive agreements.  By way of example and not limitation, Exhibit "1" in the accompanying Compendium of Exhibits is a spreadsheet listing representative samples of claims Plaintiffs paid to Liberty Chemists for Lidothol Patches that were provided (i) pursuant to an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) as the product of illegal and/or invalid prescriptions issued pursuant to collusive agreements. Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos. 0623439791-01, 0643717977-01, 0638959312-02, 0642972848-01, 0649551032-01, 0652895300-02, 0655983476-01, 0659102981-02, 0663869659-01, and 0666113634-02 in which Liberty Chemists Pharmacy mailed fraudulent claims for Lidothol Patches and related dispensing fees that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary pharmaceuticals in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

17.     In each instance, the Pharmacy Defendants knew or should have known that the claims they submitted to Plaintiffs were bogus and contained material and misleading statements regarding the propriety of the billed-for services. In particular, the Pharmacy Defendants knew or should have known that the claims that they submitted to Plaintiffs were for Lidothol Patches which were provided: (i) pursuant to an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical

necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) pursuant to collusive agreements and the product of illegal and/or invalid prescriptions.

18.     On information and belief, the Defendants willfully engaged in the practices alleged herein with the sole object of converting money.

19.     In addition to payments resulting from fraudulent claims, the fraudulent activities engaged in by Defendants caused Plaintiffs to suffer further economic injury, including, but not limited to, expenditures for verifying each fraudulent claim through examinations under oath, associated attorneys' and court reporting fees, independent medical examinations ("IMEs"), and peer reviews.

20.     It was a foreseeable consequence of Defendants' scheme to defraud that Plaintiffs would incur expenditures in an effort to verify Defendants' fraudulent claims.

21.     At all times relevant herein, but-for the Pharmacy Defendants' fraudulent misrepresentations, Plaintiffs would not have incurred expenditures in an effort to verify Defendants' fraudulent claims.

22.     At all times relevant herein, Defendants fraudulent misrepresentations directly and proximately resulted in Plaintiffs incurring expenditures in an effort to verify the Pharmacy Defendants' fraudulent claims.

23.     The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeering Influenced and Corrupt Organization Act ("RICO") applies. The Defendants adopted a fraudulent blueprint regarding the dispensing of pharmaceuticals, including but not limited to Lidothol Patches, as their business plan, and used it to participate in a systematic pattern of racketeering activity. Every facet of

Defendants' operations, from the creation of fraudulent NF-3s, to the formation of kickback arrangements with the Prescribing No-fault Clinics, to the illegal bulk dispensing of Lidothol Patches, to record keeping to billing, was carried out for the purpose of committing fraud.

24.     This lawsuit seeks to, among other things, enforce the plain language of the No-fault Law and implementing regulations, as well as its underlying public policy, which limits reimbursement of No-fault benefits to legitimate insurance claims for pharmaceutical products.  In doing so, Plaintiffs seek compensatory damages and declaratory relief that Plaintiffs are not required to pay any of Liberty Chemists' claims for Lidothol Patches, submitted to Plaintiffs for reimbursement because they were provided (i) pursuant to an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) pursuant to collusive agreements and the product of illegal and/or invalid prescriptions. By way of example and not limitation, Exhibit "2" in the accompanying Compendium of Exhibits is a spreadsheet listing a representative sample of unpaid No-fault claims from Liberty Chemists of approximately $155,000.00, which form the basis of Plaintiffs' request for declaratory relief.  Said spreadsheet is grouped by claim number, date of service and the amount pending.

## STATUTORY/REGULATORY SCHEME

25.     Pursuant to the No-fault Law, Plaintiffs are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles or pedestrians, which arise from the use or operation of such motor vehicles in the State of New York.  Covered Persons can also assign these benefits to doctors and other

properly licensed healthcare providers, including pharmacies, enabling them to bill insurance companies directly for their services.

26.     As alleged herein, the Pharmacy Defendants exploited and continue to exploit the No-fault Law by obtaining such assignments, and dispensing and billing for Lidothol Patches, that if provided at all, were medically unnecessary and provided pursuant to a fraudulent protocol in which in which virtually all Covered Persons were prescribed the Lidothol Patches irrespective of need and in violation of state and/or federal law.

27.     Liberty Chemists is ostensibly a licensed pharmacy that bills for pharmaceuticals provided to, among others, individuals covered under the No-fault Law. In exchange for their services, Liberty Chemists accepted assignments of benefits signed by Covered Persons and submitted claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

28.     In accordance with the No-fault Law and 11 N.Y.C.R.R. §§ 65 *et seq*., Liberty Chemists submitted bills for their claims to Plaintiffs using the claim form prescribed by the New York State Department of Financial Services ("DFS," f/k/a the Department of Insurance), known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or NF-3 form, or a substantially similar form.

29.     Pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to Plaintiffs by Liberty Chemists contained the following warning at the foot of the page:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime….

30.     Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs were (and are) required to promptly process claims within 30 days of receipt of proof of claim.

31.     Section 5108 of the No-fault Law circumscribes the amount that a licensed healthcare provider or other authorized person, such as a pharmacy, may recover for health service-related expenses. In particular, under this section, such persons are only entitled to reimbursement of necessary medically related expenses in accordance with the applicable fee schedules established by the Chairman of the Workers' Compensation Board and adopted by the Superintendent of the DFS.

32.     Pursuant to Ins. Law § 5108, the Superintendent of the DFS adopted, by promulgation of Regulation 83, the Workers' Compensation Board ("WCB") Fee Schedules for determining the maximum permissible reimbursement amounts for which health care providers may charge for services provided to Covered Persons under the No-fault law.  11 N.Y.C.R.R. § 68.1.

33.     Every prescription product, whether a brand name or generic drug, has a designated national drug code ("NDC") which is a unique 10-digit code that identifies the drug itself, the vendor of the drug and the quantity in which the drug was packaged. Each NDC number has an assigned Average Wholesale Price ("AWP").

34.     Each NDC (and, thus, the AWP) for a particular prescription product differs depending on both the particular supplier the drug is purchased from and the quantity in which the drug is obtained. The same drug can have a different NDC number if it is purchased from a different supplier and/or in different quantities.

35.     The maximum amount that a healthcare provider may charge for a medically necessary prescription drug or product pursuant to the No fault Law is based upon the drug's NDC number.

36.     Pursuant to 12 N.Y.C.R.R. §§ 440.5(a) and (d) (the "Pharmacy Fee schedule"), for each brand name drug a provider may charge no more than the AWP assigned to that particular NDC on the day the drug was dispensed minus 12% of the AWP, plus a single dispensing fee of $4.00.

37.     For each generic drug, the provider may charge no more than the AWP assigned to that particular NDC on the day the drug was dispensed minus 20% of the AWP, plus a single dispensing fee of $5.00.

38.     AWP is defined by 12 N.Y.C.R.R. § 440.2(a) as:

> "[t]he average wholesale price of a prescription drug as provided in the most current release of the Red Book published by Thomson Reuters or Medi-Span Master Drug Database by Wolters Kluwer Health or any successor publisher, on the day a prescription drug is dispensed or other nationally recognized drug pricing index adopted by the Chair or Chair's designee."

39.     On information and belief, Liberty Chemists was created for the purpose of participating in the fraudulent billing of insurance companies under the No-fault Law.

40.     On information and belief, Defendants intentionally targeted Lidothol Patches with extremely expensive AWPs in order to inflate the billing submitted through Liberty Chemists and to maximize their profits.

41.     On information and belief, every aspect of Defendants' fraudulent scheme was motivated by money, without regard to the grave harm inflicted on the public at large by the Defendants, to the extent that they provided any Lidothol Patches at all.

## **NATURE OF THE ACTION**

42.     This action is brought pursuant to:

i)      The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. § 1962(c);

ii)     New York State Common Law; and

iii)    The Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

## **NATURE OF RELIEF SOUGHT**

43.     Plaintiffs seek treble damages that they sustained as a result of the Defendants' schemes and artifices to defraud, and acts of mail fraud (pursuant to 18 U.S.C. § 1341), in connection with their use of the facilities of the No-fault system and its assignment of benefits mechanism to fraudulently obtain payments from Plaintiffs for pharmaceutical products, including but not limited to Lidothol Patches that it allegedly dispensed to individuals covered by Plaintiffs under New York State's No-fault Law.

44.     Plaintiffs seek compensatory and punitive damages under the Common Law.

45.     Plaintiffs further seek recovery of the No-fault claim payments made under the independent theory of unjust enrichment.

46.     Plaintiffs further seek a judgment declaring that they are under no obligation to pay any of Defendants' unpaid No-fault claims for Lidothol Patches, which were dispensed pursuant to the fraudulent scheme set forth herein.

47.     As a result of Defendants' actions alleged herein, Plaintiffs were defrauded an amount in excess of $88,000.00, the exact amount to be determined at trial, in the form of payments to Defendants and/or expenses incurred by Plaintiffs as a result of Defendants fraudulently billing Plaintiffs for Lidothol Patches that they knew or should have known were provided (i) pursuant to

an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) pursuant to collusive agreements that were the product of illegal and/or invalid prescriptions.

## THE PARTIES

### A.    Plaintiffs

48.    Plaintiff Allstate Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

49.    Plaintiff Allstate Fire and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

50.    Plaintiff Allstate Property and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

51.    Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company are collectively referred to herein as "Plaintiffs."

### B.    Defendants

52.    Sarah Zafarani ("Zafarani") is a natural person residing in the State of New York and is the principal record owner, officer and/or operator of Defendant Liberty Chemists, and at all times relevant herein, operated, managed, and/or controlled its activities.

53.    Matrix Health Corp d/b/a Liberty Chemists ("Liberty Chemists") formed on or about December 26, 2017, was first registered as a pharmacy with the New York State Office of Professions on June 4, 2018, and purports to operate its principal place of business located at 1501

Newkirk Avenue, Brooklyn, New York 11226.  Liberty Chemists is operated, managed, and/or controlled by Defendant Zafarani and, beginning in 2021, submitted fraudulent claims to Plaintiffs seeking reimbursement for pharmaceutical products under the No-fault Law.

54.     On information and belief, John Does 1 through 5 are individuals who conspired, participated, conducted, and assisted in the fraudulent and unlawful conduct alleged herein. These individuals will be added as defendants when their names and the extent of their participation become known through discovery.

55.     On information and belief, the ABC Corporations 1 through 5 are additional companies that are unknown to Plaintiffs that are owned, controlled, and operated by one or more of the John Doe Defendants, which were used in connection with the kickback scheme with the Defendants alleged herein to obtain referrals, prescriptions and/or patients in furtherance of the scheme.  These ABC Corporations 1 through 5 will be added as defendants when their names and the full extent of their participation become known through discovery.

## JURISDICTION AND VENUE

56.     The jurisdiction of the Court arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.; 28 U.S.C. §§ 1331; and principles of pendent jurisdiction.

57.     This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § l332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

58.     The Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a), and the claim for declaratory relief based upon 28 U.S.C. § 2201 and § 2202.

59.     Pursuant to 18 U.S.C. § 1965, 28 U.S.C. § 1367 and New York C.P.L.R. § 302(a), this Court has personal jurisdiction over any non-domiciliary defendant.

60.     Venue lies in this District Court under the provisions of 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## **FACTUAL BACKGROUND**

61.     Plaintiffs underwrite automobile insurance in New York State and participate as insurers in New York State's No-fault program.

62.     Under the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, Ins. Law §§ 5101, *et seq*., Plaintiffs are required to pay, *inter alia*, for health service expenses that are incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians that arise from the use or operation of such motor vehicles in the State of New York.

63.     The Pharmacy Defendants purportedly dispensed pharmaceutical products to Covered Persons for the purported treatment of soft tissue injuries, such as sprains, and musculoskeletal pain and submitted claims for payment to Plaintiffs for such services.

64.     In purported compliance with the No-fault Law and 11 N.Y.C.R.R. 65 et seq., the Pharmacy Defendants submitted proof of their claims to Plaintiffs using a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or NF-3 form or a substantially similar form.

65.     Pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to Plaintiffs by the Defendants contained the following (or substantially similar) warning on the back of the claim form:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, may be guilty of a criminal act punishable under law and may be subject to civil penalties.

66.     Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs are required to promptly process claims within 30 days of receipt of the proof of claim.

67.     To fulfill their obligation to promptly process claims, Plaintiffs justifiably relied upon the bills and documentation submitted by Zafarani through Liberty Chemists in support of their claims for pharmaceutical products, and paid Liberty Chemists based on the representations and information that Defendants submitted to Plaintiffs.

68.     At all relevant times Liberty Chemists was an illegal enterprise that engaged in common, systematic, and pervasive fraudulent practices.

69.     Liberty Chemists, which is purportedly owned, operated, and controlled by Zafarani was part of a racketeering scheme that distinguished it from a legitimate healthcare provider/pharmacy as follows:

- Unlike legitimate pharmacies, Liberty Chemists routinely misrepresented that it was dispensing Lidothol Patches pursuant to legitimate New York State Prescriptions, when it was not;

- Unlike legitimate pharmacies, Liberty Chemists misrepresented that it was in conformance with material licensing requirements which would entitle it to reimbursement of No-fault benefits when, in fact, it was involved in collusive relationships with providers that issue illegal prescriptions pursuant to an unlawful kickback arrangement and/or other financial incentives; and

- Unlike legitimate pharmacies, Liberty Chemists entered into kickback agreements with No-fault Clinics in order to generate a large volume of prescriptions pursuant to a fraudulent, pre-determined treatment and billing

protocol whereby Covered Persons received Lidothol Patches irrespective of medical necessity.

70.    The members of the enterprise alleged herein played well-defined and essential roles in the Defendants' scheme to defraud and in directing the affairs of the enterprises.  By way of example and not limitation, in furtherance of their scheme to defraud, on information and belief, Zafarani engaged in one or more the following:

- Entered into kickback or other financial arrangements with No-fault Clinics, not named as defendants in this action, to (i) issue prescriptions for large amounts of virtually identical pharmaceuticals to their patient population, and/or (ii) fabricate prescriptions, in order to conform the prescriptions to a predetermined course of treatment, irrespective of medical necessity;

- Submitted or caused to be submitted, on behalf of Liberty Chemists, numerous fraudulent claim forms seeking payment for Lidothol Patches that were purportedly (but not actually) provided to many Covered Persons;

- Prepared or caused to be prepared fraudulent bills to be mailed to Plaintiffs; and/or

- Mailed or caused those acting under their direction to mail bogus claims to Plaintiffs, knowing that they contained materially false and misleading information.

71.    At all relevant times mentioned herein, Zafarani knew that the prescriptions provided by the No-fault Clinics were fraudulent in that they were issued pursuant to a fraudulent treatment protocol at the No-fault Clinic in connection with an unlawful referral and/or kickback scheme for medically unnecessary Lidothol Patches.

72.    At all relevant times mentioned herein, Zafarani, through Liberty Chemists, directly or through others acting under and pursuant to their direction, instruction, and control, submitted or caused to be submitted the fraudulent prescription and/or claim forms, in furtherance of the scheme to defraud alleged herein, to obtain payment in connection with fraudulent claims.

73.    At all relevant times mentioned herein, Zafarani and the No-fault Clinics, acting in concert with each other, participated in, conducted, controlled, conspired together, aided and

abetted and furthered the fraudulent schemes through a common course of conduct and purpose, which was to defraud insurers, in general, and Plaintiffs, in particular, of money.

74.     In these and numerous other ways, Defendants sought to deceive Plaintiffs into paying fraudulent claims that typically exceeded thousands of dollars per Covered Person.

A.     **The Fraudulent Prescriptions and Examination Reports**

75.     As a matter of pattern, practice and protocol, the Prescribing No-fault Clinics routinely prescribed, or purported to prescribe, the Lidothol Patches and select other medications, including NSAIDs and muscle relaxers, pursuant to a predetermined protocol irrespective of medical necessity.

76.     On information and belief, in furtherance of this predetermined protocol and in order to further facilitate the fraud set forth herein, Defendants entered into agreements with one or more of the Prescribing No-fault Clinics, Clinic Controllers and prescribing providers to utilize generic, boilerplate examination reports specifically designed to justify the continued and voluminous use of medically unnecessary Lidothol Patches and other select oral medications, including NSAIDS and muscle relaxers.




77.     By way of example and not limitation, in many instances, the Prescribing No-fault Clinics stamped the generic, boilerplate examination reports with a pre-determined set of prescription medications corresponding with prescriptions issued to one or more pharmacies, including Liberty Chemists, including, for example:

78.     Exhibit "3" in the accompanying Compendium of Exhibits is a sampling of the generic, preprinted, boilerplate examination reports utilized by the No-fault Clinics, Clinic Controllers, and prescribing providers which have been stamped with a limited pre-determined set of prescription medications to be prescribed to Covered Persons.

79.     The Prescribing No-fault Clinics and Clinic Controllers would, in many instances, utilize generic, boilerplate examination reports with preprinted medications designed to intentionally limit the pharmaceutical options available to Covered Persons to those which could reap Defendants the most profits, notwithstanding any perceived benefit or harm to Covered Persons.

80.     Moreover, the reliance upon generic, boilerplate examination reports by No-fault Clinics, Clinic Controllers and/or prescribing providers renders the prescriptions submitted by Defendants to Plaintiffs in violation of Section 910 of the Official Compilation of Codes, Rules and Regulations of the State of New York, which provides that:

> "[a] prescription shall be issued by a practitioner for legitimate medical purposes in good faith and in the course of his or her professional practice only. An order purporting to be a prescription that is not issued for legitimate medical purposes is not a prescription within the meaning of the New York State Education Law and the New York State Public Health Law and the person knowingly dispensing such an order, as well as the person issuing such order, shall be subject to all penalties provided in law or regulations."

*See* 10 N.Y.C.R.R. § 910(2)(f).

81.     On information and belief, at all times relevant herein, the Defendants knew or should have known that the pre-printed, boilerplate evaluation forms were bogus.

**B.**     **Overview of Laws and Regulations**

*Overview of Guidelines for Topical Pain Patches*

82.     On information and belief, topical pain patches, such as Lidothol and/or generic Lidocaine 4.5%-Menthol 5% transdermal patches, are a type of topical pain-relief drug that are "locally administered treatments".

83.     The role of topical pain medication in pain management is not a scientifically proven fact. By way of example and not limitation, according to medical literature, due to the absence of specific compliance and adherence studies comparing topical treatment versus traditional routes in pain management, the role of topical preparations in patient adherence remains obscure.

84.     Topical pain medications should undergo trials, including in the case of topical lidocaine, a trial in the range of 2-4 weeks.

85.     The medical standard in reference to topical drug delivery, as presented in the Workers Compensation Board New York Non-Acute Pain Medical Treatment Guidelines, First Edition, September 15, 2014, pages: 37-38, and current edition, effective May 2, 2022, page 39, states the following: "For most patients, the effects of long-term use are unknown and thus may be better used episodically. These agents may be used in those patients who prefer topical treatments over oral medications."

86.     According to the latest Workers Compensation Board Medical Treatment Guidelines (First Edition, September 15, 2014, pages: 28-38; Current edition, effective May 2, 2022, page 32) regarding Non-Acute Pain, "Topical, oral, and/or systemic compound medications are not recommended."

### *Overview of New York State Laws and Regulations Regarding Operations of Legitimate Pharmacies*

87.     Pursuant to New York State law, a provider of healthcare services is not entitled to reimbursement for No-fault Benefits if the provider fails to meet any applicable New York state or local licensing requirement necessary to perform such service in New York. *See* 11 N.Y.C.R.R. § 65-3.16(a)(12).

88.     New York Education Law § 6808, prohibits a person, firm, corporation, or association from possessing drugs, prescriptions, or poisons for the purpose of compounding, dispensing, retailing, wholesaling, or manufacturing, or offering drugs, prescriptions, or poisons for sale at retail or wholesale unless they are registered by the New York State Department of Education as a pharmacy, wholesaler, manufacturer, or outsourcing facility.

89.     New York Education Law § 6530(38) prohibits a licensed physician from entering into an arrangement or agreement with a pharmacy for the compounding and/or dispensing of secret formula ("coded") or specially marked prescriptions.

90.     New York Education Law § 6810(7)(a) prohibits pharmacies from dispensing a drug when a prescription form for the drug includes any other drug.

91.     New York Education Law § 6810(9) prohibits persons and corporations, not licensed to issue a prescription, to willfully cause prescription forms, blanks, or facsimiles thereof to be disseminated to any person other than a person who is licensed to issue a prescription.

92.     New York Education Law § 6811 makes it a crime for any person to enter into an agreement with a physician (or other licensed healthcare provider) for the compounding or dispensing of coded prescriptions.

93.     New York Education Law § 6509-a prohibits a professional licensee from "directly or indirectly" requesting, receiving, or participating in the division, transference, assignment,

rebate, splitting, or refunding of a fee in connection with professional care or services including services related to drugs and/or medications.

94.     8 N.Y.C.R.R. § 29.1(b)(3) prohibits a professional licensee from "directly or indirectly" offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.

95.     New York Education Law § 6530(18) prohibits a licensed physician from "directly or indirectly" offering, giving, soliciting, receiving or agreeing to receive any fee or other consideration to or from a third party in exchange for patient referrals or in connection with the performance of professional services.

96.     New York Education Law § 6530(17) prohibits pharmacies and other health care professionals from "[e]xercising undue influence" over a patient, including by the "promotion of the sale of services, goods, appliances, or drugs in such manner as to exploit the patient for the financial gain of the licensee or of a third party."

97.     8 N.Y.C.R.R. §29.1(b)(2) further provides that it constitutes professional misconduct when a pharmacies or other health care professionals "exercise[] undue influence" over a patient or client including by the "promotion of the sale of services, goods, appliances, or drugs in such manner as to exploit the patient for the financial gain of the licensee or of a third party."

98.     8 N.Y.C.R.R. § 63.6(b)(7) requires that pharmacists "conduct a prospective drug review before each prescription is dispensed or delivered to a patient or person authorized to act on behalf of the patient. Such review shall include screening for potential drug therapy problems due to therapeutic duplication, drug-drug interactions, including serious interactions with over-

the-counter drugs, incorrect drug dosage or duration of drug treatment, drug-allergy interactions, and clinical abuse or misuse."

99.    New York Education Law § 6808(2)(c), requires that the "names of the owner or owners of a pharmacy shall be conspicuously displayed upon the exterior of such establishment. The names so displayed shall be presumptive evidence of ownership of such pharmacy by such person or persons."

100.    New York Education Law § 6808(e) requires that every pharmacy shall be under the immediate supervision and management of a licensed pharmacist.

101.    New York Education Law § 6808(e) provides that pharmacy owners and supervising pharmacists shall be responsible for the proper conduct of a pharmacy.

102.    New York Education Law § 6808(e) provides that pharmacy owners are responsible "for the strength, quality, purity and the labeling thereof of all drugs, toxic substances, devices and cosmetics, dispensed or sold, subject to the guaranty provisions of this article and the public health law."

103.    New York Education Law § 6808(h) requires that individual applicants and all officers, directors, and shareholders with at least ten percent interest in corporate applicants "shall be over good moral character."

## MECHANICS OF THE SCHEME TO DEFRAUD

104.    Beginning in December 2021 and continuing until the present day, Defendants and others not named in the Complaint have engaged in a systematic fraudulent billing scheme based upon the alleged provision of Lidothol Patches to Covered Persons.

105.    Defendant Zafarani, through Liberty Chemists, devised and carried out a scheme to fraudulently bill insurers, in general, and Plaintiffs, in particular, by making material misrepresentations in bill submissions to Plaintiffs and fraudulently billing for Lidothol Patches,

which were provided, if at all, irrespective of medical necessity, pursuant to fraudulent prescriptions based upon a pre-determined treatment protocol, and further, cost the Pharmacy Defendants a fraction of the amounts that they materially misrepresented in their fraudulent bill submissions to Plaintiffs.

106.    Defendants engaged in a massive scheme to defraud in which Zafarani, through Liberty Chemists, as a matter of pattern, practice and protocol, manufactured, dispensed, or caused to be dispensed, expensive Lidothol or its generic alternative, Lidocaine 4.5%-Menthol 5% transdermal patches, to Covered Persons irrespective of medical necessity.

107.    In 2015, the Department of Health and Human Services, Office of the Inspector General, issued a report noting the potential for fraud in abuse by pharmacies in New York related to the prescription, among other topical pain medications, diclofenac sodium 3% gel, and lidocaine 5% pain patches. *See Questionable Billing and Geographic Hotspots Point to Potential Fraud and Abuse in Medicare Part D,* OEI-02-15-00190 (June 2015)

108.    Moreover, In 2018, the U.S. Department of Health and Human Services, Office of the Inspector General, issued a report noting that fraud and abuse by pharmacies was significant in the prescribing and dispensing of products containing diclofenac and/or lidocaine. *See, Questionable Billing for Compounded Topical Drugs in Medicare Part D*, OEI-02-16-00440 (August 2018).

109.    Here, by way of example and not limitation, the Lidothol Patches account for over 97% of the billing to Plaintiffs from Liberty Chemists.

110.    Liberty Chemists purports to be a storefront pharmacy operating in Astoria, New York, but, on information and belief, does not advertise to the general public, and does not otherwise market or seek business from individual patients.

111.    Instead, as part of their pattern, practice and protocol, and in furtherance of their massive scheme to defraud, Defendants entered into illegal, collusive agreements whereby the Pharmacy Defendants paid kickbacks to No-fault Clinics and Clinic Controllers in exchange for the No-fault Clinics' and prescribing providers' prescribing large volumes of the Lidothol Patches, which were specifically targeted for their high profit margins, and directing these prescriptions to be dispensed and billed by Liberty Chemists.

112.    In fact, a vast majority of the billing that Liberty Chemists submitted to Plaintiffs for reimbursement of pharmaceuticals dispensed, if at all, to Covered Persons came from a few prescribing physicians or practices, with a history of engaging in fraudulent No-fault billing schemes.

113.    By way of example but not limitation, numerous fraudulent prescriptions submitted in claims for reimbursement from Liberty Chemists to Plaintiffs were issued by medical providers that purportedly provided services through Macintosh Medical, P.C., a professional corporation in which Jonathan Landow ("Landow") is listed as the record owner and which operates out of several locations throughout the New York metropolitan area.  Landow and several of his professional corporations in which he is listed as the record owner, including Macintosh Medical, P.C., have been sued by multiple No-fault insurance carriers for allegedly engaging in a multimillion-dollar fraud scheme involving, among other things, rendering healthcare services pursuant to fraudulent billing and treatment protocols and engaging in illegal kickback and referral arrangements. *See, e.g., Allstate Ins. Co., et al, v. Landow, M.D., et al.*, 24-cv-02010 (E.D.N.Y.); *Government Emp. Ins. Co., et al. v. Landow, M.D., et al.*, 21-cv-01440 (E.D.N.Y.); *Government Emp. Ins. Co., et al. v. Urban Medical, P.C., M.D., et al.*, 18-cv-02956 (E.D.N.Y.); *Travelers Pers. Ins. Co., et al. v. Landow, M.D., et al.*, Index No. 656567/2021 (N.Y. Sup. Ct., N.Y. County).

114.    By way of further example but not limitation, numerous other fraudulent prescriptions for Lidothol Patches, resulting in claims submitted by Liberty Chemists to Plaintiffs were issued by Jean-Pierre Georges Barakat, MD, through one or more of his professional corporations, including Far Rockaway Medical PC., a professional corporation in which Barakat is listed as the record owner. Barakat, has been sued numerous times for engaging in various multimillion-dollar fraud schemes involving, among other things, generating boilerplate, formulaic, illusory and/or medically unnecessary prescriptions for a multitude of pharmaceuticals , and the rendering healthcare services pursuant to fraudulent billing and treatment protocols and engaging in illegal kickback and referral arrangements. *See Government Employees Ins. Co. et al. v. Direct RX Pharmacy Inc.,* 19-cv-5876 (DG)(LB) (E.D.N.Y. 2019); *Government Employees Ins. Co. et al. v. Barakat, et al,* 22-cv-7532 (NGG)(RML) (E.D.N.Y. 2022); *Government Employees Ins. Co. et al. v. Gelb, et al,* 23-cv-5250 (ENV)(RML).

115.    These Lidothol Patches were prescribed and dispensed pursuant to a predetermined protocol that lacked individualized care, was designed to exploit patients for financial gain, was implemented without regard to pharmacologic outcomes and was implemented with gross indifference to a patient's health and safety.

116.    On information and belief, in connection with the unlawful financial arrangements with No-fault Clinics, the Pharmacy Defendants would pay kickbacks to individuals associated with the No-fault Clinics in order to obtain referrals for the fraudulent Lidothol Patches to be provided to Covered Persons who treated at the Clinics.

117.    On information and belief, in keeping with the fact that the prescriptions for Lidothol Patches were the result of unlawful kickbacks and/or referral relationships between the pharmacy and the Clinics, Zafarani never met most of the physicians who purportedly signed the

prescriptions that were provided to the Pharmacy Defendants.  Moreover, a number of the prescriptions submitted by Zafarani, through Liberty Chemists, to Plaintiffs were fabricated in order to misrepresent that medications were medically necessary, when in fact, the medications were provided, if at all, to financially enrich Zafarani through a fraudulent protocol of treatment.

118.    Further, the prescriptions from the Clinics were sent to and obtained by Liberty Chemists directly from the Clinics without any communication or involvement by the Covered Persons.  In further keeping with the fact that the prescriptions for the Lidothol Patches were the result of unlawful financial arrangements between the Pharmacy Defendants and the No-fault Clinics, the Covered Persons were never given access to the prescriptions or given the option to use any other pharmacy other than Liberty Chemists.

119.    At all relevant times mentioned herein, the Lidothol Patches supplied by Liberty Chemists was provided pursuant to a predetermined course of treatment, irrespective of medical necessity, based on illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics, who provided the prescriptions to Liberty Chemists to be used in support of the fraudulent Lidothol Patches claims that exploited and manipulated the payment formulas under the applicable Fee Schedule in order to maximize the charges that they could submit to Plaintiffs and other insurers.

120.    As a result of the unlawful kickback and/or other financial compensation agreements, the Pharmacy Defendants obtained large numbers of prescriptions and access to Covered Persons' identifying information that enabled them to bill hundreds of thousands of dollars to Plaintiffs, for exorbitantly priced Lidothol Patches.

121.    But for the payment of kickbacks from the Pharmacy Defendants, the No-fault Clinics, would not have had any reason to: (i) direct a substantial number of medically unnecessary

prescriptions to Liberty Chemists; (ii) make the Covered Persons' information available to Liberty Chemists; and/or (iii) provide Liberty Chemists with the fraudulent prescriptions.

122.    Upon information and belief, the payment of kickbacks and/or other financial compensation  by the Pharmacy Defendants was made at or near the time the prescriptions were issued, but the Pharmacy Defendants and the No-fault Clinics affirmatively concealed the particular amounts paid since the payment of kickbacks in exchange for patient referrals violates New York law.

123.    As a result of the unlawful financial arrangements, the Pharmacy Defendants billed hundreds of thousands of dollars to Plaintiffs, and likely millions of dollars to other New York automobile insurers, for the Lidothol Patches.

### A.    Fraudulent Dispensing and Billing of Lidothol Patches Without Regard to Patient Care in Order to Exploit Patients for Financial Gain

124.    As part of Defendants' scheme to defraud, Defendants entered into kickback or other financial arrangements with the Prescribing No-fault Clinics and/or prescribing providers, who instead of prescribing cheaper FDA-approved and/or commercially available medication to Covered Persons, would instead prescribe and/or dispense the Lidothol or its generic equivalent, Lidocaine 4.5%-Menthol 5% transdermal patches, which were prescribed without regard to the efficacy and/or medical necessity of the drugs.

125.    Regardless of whether a Covered Person was seen by a doctor on the date of the initial office visit at any of the Prescribing No-fault Clinics, a Covered Person's initial office consultation would automatically trigger a series of internal practices and procedures in which the Prescribing No-fault Clinics, in exchange for kickbacks and/or other financial compensation agreements with Defendants, would prescribe Lidothol Patches, pursuant to a standard, predetermined protocol regardless of whether such pharmaceuticals were medically necessary.

126. Such Lidothol Patches were issued for virtually every Covered Person, regardless of factors such as their age, height, weight, prior medical history, position in the vehicle and/or purported involvement in an accident and without first trying commercially available alternative medications that are FDA-approved and available at significantly less cost.

127. In fact, pursuant to the standard, predetermined protocol, the Covered Persons were routinely prescribed the Lidothol Patches without the prescribing provider first taking a detailed patient history and without determining whether the Covered Person was currently taking any medications or suffering from any comorbidities.

128. Pursuant to the standard, predetermined protocol, the Covered Persons were routinely prescribed the Lidothol Patches pursuant to regimented initial and follow-up examinations, which, on information and belief, were designed to justify continued, voluminous, and excessive use of prescribed pharmaceuticals. The resulting examination reports rarely gave any indication as to why alternative FDA-approved and/or over-the-counter medications would not sufficiently address the Covered Person's condition.

129. The same Lidothol Patches were often dispensed and billed by Liberty Chemists notwithstanding the failure of the proscribing provider to indicate these pharmaceuticals were necessary and/or prescribed in the corresponding initial or follow-up evaluation report. Without limitation, the following are examples of such inconsistencies in the prescriptions billed and the prescribing provider's evaluation reports.

- Covered Person C.W. (Claim No. 0631045457-01) was allegedly involved in a motor vehicle accident on June 25, 2021. Thereafter, on June 30, 2021, C.W. sought treatment at Far Rockaway Medical PC (not named as a defendant in the Complaint), located at 4014A Boston Road, Bronx, New York, and, thereafter, a follow-up examination on August 4, 2021. In the evaluation reports by Jean-Pierre G. Barakat, M.D. (not named as a defendant in the Complaint), there is no mention of any topical pain creams or patches. Nonetheless, Liberty Chemists billed Plaintiffs for allegedly

dispensing Lidothol 4.5%-5% patches pursuant to a prescription allegedly issued by Jean-Pierre G. Barakat, M.D. on August 4, 2021.

- Covered Person C.B. (Claim No. 0671495710-02) was allegedly involved in a motor vehicle accident on May 28, 2022. Thereafter, on June 8, 2022, C.B. sought treatment at Far Rockaway Medical PC (not named as a defendant in the Complaint), located at 4014A Boston Road, Bronx, New York, and, thereafter, a follow-up examination on July 6, 2022. In the evaluation reports by Jean-Pierre G. Barakat, M.D. (not named as a defendant in the Complaint), there is no mention of any topical pain creams or patches. Nonetheless, Liberty Chemists billed Plaintiffs for allegedly dispensing Lidothol 4.5%-5% patches pursuant to a prescription allegedly issued by Jean-Pierre G. Barakat, M.D. on July 6, 2022.

- Covered Person R.M. (Claim No. 0671495710-03) was allegedly involved in a motor vehicle accident on May 28, 2022. Thereafter, on June 8, 2022, R.M. sought treatment at Far Rockaway Medical PC (not named as a defendant in the Complaint), located at 4014A Boston Road, Bronx, New York. In the evaluation reports by Jean-Pierre G. Barakat, M.D. (not named as a defendant in the Complaint), there is no mention of any topical pain creams or patches. Nonetheless, Liberty Chemists billed Plaintiffs for allegedly dispensing Lidothol 4.5%-5% patches pursuant to a prescription allegedly issued by Jean-Pierre G. Barakat, M.D. on June 8, 2022.

130. Irrespective of the needs of any individual Covered Person, the Prescribing No-fault Clinics prescribed the same topical pain patches, which contained the exact same amount of simple ingredients, including Lidocaine 4.5% and Menthol 5% to each and every Covered Person.

131. On information and belief, as part of the kickback or other financial compensation agreement with the Prescribing No-fault Clinics and in furtherance of the scheme to defraud, on their first or second visit to the Prescribing No-fault Clinic(s), the Covered Persons would be given a number of documents to complete and sign, including, but not limited to, assignment of benefit forms in favor of Liberty Chemists, which, after execution, the prescribing No-fault Clinics would transmit to Liberty Chemists.

132. In many if not all instances, the Prescribing No-fault Clinics never provided Covered Persons with the prescriptions for Lidothol Patches to be filled at a pharmacy chosen by the Covered Persons. Rather, the Covered Persons were given the Lidothol Patches at the

Prescribing No-fault Clinics without even being given the prescription, or in some instances, being told that such medication was being prescribed, to eliminate the possibility that the Covered Person(s) would fill the prescription(s) with a legitimate pharmacy.

133.   On information and belief, the prescriptions for Lidothol Patches were filled by Liberty Chemists as part of illicit and collusive arrangements whereby, in exchange for issuing such prescriptions, the referring No-fault Clinics, Clinic Controllers and/or prescribing providers received illegal payments from Defendants.

134.   At all times relevant herein, Liberty Chemists, as well as the No-fault Clinics, Clinic Controllers and prescribing providers, knew that there were effective, commercially available, FDA-approved and cheaper medications which would have been suitable to prescribe to Covered Persons, and that the Lidothol Patches were being prescribed solely to enrich Defendants, the Prescribing No-fault Clinics and Clinic Controllers.

135.   In doing so, and as a result of Defendants' collusive agreements with Prescribing No-fault Clinics, Clinic Controllers and prescribing providers, Defendants promoted the sale of the Lidothol Patches over effective, commercially available, FDA-approved and/or cheaper alternatives, and thereby exercised undue influence over the Covered Persons in order to exploit the Covered Persons for their own financial gain.

136.   Demonstrative that the No-fault Clinics prescribed the Lidothol Patches in order to exploit the patient for financial gain, irrespective of medical necessity and without regard to genuine patient care, in virtually, if not all instances, the Prescribing No-fault Clinics routinely:

- Failed to document in the Covered Persons' initial or follow-up evaluation reports on why the Lidothol Patches was medically necessary;

- Failed to document a detailed medical history in Covered Persons' initial or follow-up evaluation reports, thereby failing to fully examine or document potential contraindications or comorbidities;

- Failed to document in Covered Persons' initial or follow-up evaluation reports on why commercially available over-the-counter, FDA approved medications could not be prescribed instead of the Lidothol Patches; and

- Failed to document in Covered Persons' follow-up reports if the Lidothol Patches was used by Covered Persons, and if so, was medically beneficial.

137. Defendants engaged in the scheme to defraud alleged herein when they knew, or should have known, that substantially cheaper and commercially available FDA-approved medications proven to have therapeutic effects were available.

138. The Lidothol Patches, could have and should have been replaced with cheaper, over-the-counter and readily available substitutes that have substantially similar, if not identical indications and effects.

139. The Lidothol Patches such as those dispensed by Liberty Chemists should be a final treatment option after oral medications and other commercially available, over-the-counter, FDA-approved pain patches are ineffective or not tolerated by patients.

140. The Lidothol Patches provided by Liberty Chemists are not effective in treating the soft tissue injuries, such as sprains, and/or musculoskeletal pain for which they were prescribed.

141. There are no published, peer-reviewed studies to support the therapeutic effect of pain patches consisting of the medications that are in the Lidothol Patches dispensed/manufactured by Liberty Chemists for the treatment of soft tissue injuries, such as sprains, and/or musculoskeletal pain, such as those purportedly suffered by the Covered Persons.

142. In order to facilitate the fraud set forth herein, Covered Persons at the Prescribing No-fault Clinics were routinely prescribed topical pain medication, in the form of Lidothol, or its generic equivalent, Lidocaine 4.5%-Menthol 5% transdermal patches, ("Lidothol Patches"), a non-FDA approved drug, at voluminous rates and directed to have this prescription filled and dispensed

(if at all) by Liberty Chemists, pursuant to Defendants' illicit, collusive arrangements with the Prescribing No-fault Clinics, Clinic Controllers and/or prescribing providers, in order to maximize profits, at the expense of genuine patient care, medical necessity or pharmacological outcome.

143. The United Stated Federal Food, Drug, and Cosmetic Act ("FDCA") authorizes the FDA to oversee the safety of food, drugs, and cosmetics.

144. The FDA strictly regulates over-the-counter and prescription drugs, and oversees drug manufacturing in several ways, including testing drugs and routinely inspecting drug manufacturing plants and outsourcing facilities engaged in the compounding of drugs.

145. Federal law requires all new drugs in the United States be shown to be safe and effective for their intended use prior to marketing. According to the FDA, unapproved drugs pose significant risks to patients because they have not been reviewed by the FDA for safety, effectiveness, or quality. Without FDA review, there is no way to know if these drugs are safe and effective for their intended use, manufactured in a way that endures consistent drug quality, or whether their label is complete and accurate.

146. The FDA considers Lidothol patches to be an unapproved drug.

147. Unapproved prescription drugs are only allowed to be marketed in limited circumstances, such as if the drug is subject to an open drug efficacy study or if health care professionals rely on the drug to treat serious medical conditions where there is no FDA-approved drug to treat the condition. No exception applies to Lidothol patches that may allow them to be marketed as prescription drug products.

148. Accordingly, on information and belief, no legitimate pharmacy owner would purchase and dispense as prescription drugs large volumes of unapproved drugs, like Lidothol patches, not reviewed by the FDA.

149.     Similarly, on information and belief, no legitimate physician or healthcare provider would issue prescriptions for unapproved drugs like Lidothol patches, particularly since there are numerous other FDA-approved drugs available that the physician or healthcare provider could prescribe without any extraordinary risk to the patient.

150.     Notwithstanding the foregoing, over 97% of the billing submitted by Liberty Chemists to Plaintiffs was for Lidothol Patches. The fact that the Lidothol Patches were routinely dispensed and billed by Liberty Chemists almost exclusively to the exclusion of any other pharmaceuticals demonstrates that Liberty Chemists is not a legitimate pharmacy.

151.     In short, the Defendants obtained prescriptions and dispensed and billed for "unapproved" drugs through Liberty Chemists without any way to know if the drugs are safe and effective, manufactured in a way that ensured consistent drug quality, or contained complete and accurate labelling –solely to exploit the patients for financial gain, without regard for genuine patient care.

152.     By engaging in a fraudulent scheme whereby Lidocaine 4.5%-Menthol 5% transdermal patches were routinely prescribed without medical necessity or FDA approval, instead of (and without first prescribing) lower-strength, commercially available products, Defendants placed their financial gain above genuine patient care and demonstrated a gross indifference to a patient's health and safety.

153.     Moreover, Liberty Chemists' near exclusive billing for Lidothol Patches, to the exclusion of any other pharmaceuticals demonstrates a lack of individualized patient care.

154.     Lidocaine is a local anesthetic used to relieve neuropathic pain of post-herpetic neuralgia, also referred to as after-shingles pain, and to relieve skin irritations such as minor burns, sunburn, abrasions of the skin, insect bites and hemorrhoids.

155.    Menthol is a medication used to treat minor aches and pains of the muscles and joints by causing the skin to feel cool and then warm to distract the patient from feeling pain deeper in the patient's muscles and joints.

156.    According to *New York State Workers' Compensation Board, Non-Acute Pain Medical Treatment Guidelines, (First Edition, September 15, 2014, page 38;* August 25, 2021 Update, effective May 2, 2022, page 39), *New York State Workers' Compensation Board, Mid and Low Back Injury, (First Edition, September 15, 2014;* August 25, 2021 Update, effective May 2, 2022, page 38) and the *New York State Workers' Compensation Board, Neck Injury, (First Edition, September 15, 2014;* August 25, 2021 Update, effective May 2, 2022, page 34): **"**Topical lidocaine is only indicated when there is documentation of a diagnosis of neuropathic pain. In this instance, a trial for a period of no greater than four weeks can be considered, with the need for documentation of functional gains as criteria for additional use."

157.    The prescribing providers routinely failed to document any functional deficit that could be managed by topical Lidocaine or a contraindication to use oral medications, demonstrating that the Lidothol Patches were routinely dispensed as part of an illegal kickback arrangement in furtherance of the scheme to defraud alleged herein.

158.    By way of example and not limitation, Lidothol Patches was prescribed to Covered Persons, dispensed by Liberty Chemists and billed to Plaintiffs for reimbursement in the following instances where the examination reports recorded no incidence of neuropathic pain or any functional deficit appropriate for the prescription:

- Covered Person K.P. (Claim No. 0638959312-02) was allegedly involved in a motor vehicle accident on August 29, 2021. Thereafter, K.P. presented for treatment at a No-fault Clinic located at 1650 Eastern Parkway, Brooklyn, New York, where K.P. purportedly underwent an initial examination by Cathy Delerme-Pagan, M.D. (not named as a defendant in the Complaint) at 406 Medical P.C. (not named as a Defendant in the

Complaint) on September 1, 2021, and, thereafter, a follow-up examination on November 2, 2021.  Even though 406 Medical P.C.'s report contained diagnoses of headaches, sprains/strains of the cervical, thoracic and lumbar spine, sprain/strain/derangement of the shoulder, and contusions of the arm and elbow (i.e. no neuropathic pain), transdermal pain patches containing Lidocaine 4.5% were prescribed on September 1, 2021 and November 2, 2021, and purportedly dispensed by Defendant Liberty Chemists on September 30, 2021 and November 9, 2021.

- Covered Person E.F. (Claim No. 0643581234-02) was allegedly involved in a motor vehicle accident on September 6, 2021. Thereafter, E.F. presented for treatment at a No-fault Clinic located at 1650 Eastern Parkway, Brooklyn, New York, where E.F. purportedly underwent an initial examination by Cathy Delerme-Pagan, M.D. (not named as a defendant in the Complaint) at 406 Medical P.C. (not named as a Defendant in the Complaint) on September 15, 2021.  Even though 406 Medical P.C.'s report contained diagnoses of sprains/strains of the thoracic and lumbar spine, and knee (i.e. no neuropathic pain), a transdermal pain patch containing Lidocaine 4.5% was prescribed on September 15, 2021, and purportedly dispensed by Defendant Liberty Chemists on October 7, 2021.

- Covered Person P.G. (Claim No. 0645581596-01) was allegedly involved in a motor vehicle accident on October 17, 2021. Thereafter, P.G. presented for treatment at a No-fault Clinic located at 1650 Eastern Parkway, Brooklyn, New York, where P.G. purportedly underwent an initial examination by Cathy Delerme-Pagan, M.D. (not named as a defendant in the Complaint) at 406 Medical P.C. (not named as a Defendant in the Complaint) on October 26, 2021, and, thereafter, a follow-up examination on March 1, 2022.  Even though 406 Medical P.C.'s reports contained diagnoses of sprains/strains of the cervical and lumbar spine, and sprains/strains/derangement of the shoulder, hip, knee and elbow (i.e. no neuropathic pain), transdermal pain patches containing Lidocaine 4.5% were prescribed on October 26, 2021 and March 2, 2022, and purportedly dispensed by Defendant Liberty Chemists on November 9, 2021 and March 12, 2022.

159.    Even if initial or follow-up evaluation reports by the prescribing provider listed any genuine patient need for a pain patch containing Lidocaine, which it often did not, the reports routinely failed to include any potential reason why prescription Lidocaine 4.5%-Menthol 5% transdermal patches were medically necessary above and beyond a substantially similar and/or lower strength alternatives, commercially available at a fraction of the cost, such as generic

Lidocaine 4%-Menthol 1% patches such as Walgreens' Cool n' Heat Patch, or Icy Hot: Max brand patches.

160.    Liberty Chemists nearly always billed $2,626.80 to fill a single prescription of 60 Lidocaine 4.5%-Menthol 5% transdermal patches. However, over-the-counter alternatives, such as Walgreens' Cool n' Heat Patch, are commercially available at a retail cost of less than $120 for 60 patches and contain Lidocaine 4%-Menthol 1%.

161.    Despite this disparity in cost for a substantially similar product, on information and belief, Liberty Chemists regularly dispensed and billed for Lidocaine 4.5%-Menthol 5% transdermal patches without any indication in the examination reports that the patient first tried any commercially available alternative, even for minor sprains.

162.    By way of example and not limitation, Liberty Chemists dispensed Lidocaine 4.5%-Menthol 5% transdermal patches for Covered Persons and submitted bills to Plaintiffs for reimbursement even though the evaluation reports and/or other documentation in support of this billing demonstrated no medical necessity for Lidocaine 4.5%-Menthol 5% transdermal patches instead of Lidocaine 4%-Menthol 1% or any indication that the significantly cheaper, commercially available alternative was considered:

- Covered Person A.H. (Claim No. 0645581596-11) was allegedly involved in a motor vehicle accident on October 17, 2021. Thereafter, A.H. presented for treatment at a No-fault Clinic located at 1650 Eastern Parkway, Brooklyn, New York, where she purportedly underwent an initial examination by Cathy Delerme-Pagan, M.D. (not named as a defendant in the Complaint) at 406 Medical P.C. (not named as a Defendant in the Complaint) on October 21, 2021.  Even though 406 Medical P.C.'s reports made no mention of A.H. having first tried any lower dosage of Lidocaine, a transdermal pain patch containing Lidocaine 4.5% was prescribed on October 21, 2021, and dispensed by Defendant Liberty Chemists on November 3, 2021.

- Covered Person F.S. (Claim No. 0647551976-02) was allegedly involved in a motor vehicle accident on October 31, 2021. Thereafter, F.S. presented for

treatment at a No-fault Clinic located at 430 West Merrick Road, Valley Stream, New York, where she purportedly underwent an initial examination by Aleksander Kopach, P.A. (not named as a defendant in the Complaint) at Macintosh Medical PC (not named as a Defendant in the Complaint) on November 10, 2021, and, thereafter, a follow-up examination on February 2, 2022. Even though Macintosh Medical PC's reports made no mention of F.S. having first tried any lower dosage of Lidocaine, transdermal pain patches containing Lidocaine 4.5% were prescribed on November 11, 2021 and December 27, 2021, and dispensed by Defendant Liberty Chemists on November 18, 2021 and February 2, 2022.

- Covered Person U.D. (Claim No. 0670607480-01) was allegedly involved in a motor vehicle accident on May 22, 2022. Thereafter, U.D. presented for treatment at a No-fault Clinic located at 430 West Merrick Road, Valley Stream, New York, where she purportedly underwent an initial examination by Aleksander Kopach, P.A. (not named as a defendant in the Complaint) at Macintosh Medical PC (not named as a Defendant in the Complaint) on May 25, 2022. Even though Macintosh Medical PC's report made no mention of U.D. having first tried any lower dosage of Lidocaine, a transdermal pain patch containing Lidocaine 4.5% was prescribed on May 31, 2022 and dispensed by Defendant Liberty Chemists on June 11, 2022.

163. Moreover, Lidocaine is not without risks or side effects, and the increased dosage at which the Prescribing No-fault Clinics and prescribing providers prescribed the Lidocaine increases the risk of the side effects associated with the medication.

164. Excessive dosage or short intervals between doses of Lidocaine can cause serious adverse effects including, among others, bradycardia, hypotension, and cardiovascular collapse that may lead to cardiac arrest.

165. Liberty Chemists was not and is not entitled to any reimbursement from Plaintiffs for the Lidothol patches and/or generic Lidocaine 4.5%-Menthol 5% transdermal patches.

166. The bills mailed by Liberty Chemists were fraudulent in that they misrepresented that (i) the Lidothol Patches were medically necessary when in fact they were not; (ii) they were provided pursuant to legitimate prescriptions when in fact they were not; and (iii) they were prescribed by legitimate medical providers when in fact they were provided pursuant to illegal kickback and/or financial compensation arrangements with No-Fault Clinics. In these and

numerous other ways alleged herein, the Pharmacy Defendants designed and executed a fraudulent blueprint to bill and obtain payments from Plaintiffs for expensive Lidothol Patches that they were not entitled to receive under the No-fault law and implementing regulations.

167.    Defendants' activities described herein with respect to the Lidothol patches and/or generic Lidocaine 4.5%-Menthol 5% transdermal patches promoted and facilitated other acts that imposed foreseeable costs onto Plaintiffs well beyond the insurance proceeds that Defendants collected, including, but not limited to, Plaintiffs' expenditures for verifying each fraudulent claim through examinations under oath, associated attorneys' and court reporting fees, IMEs, and peer reviews.

### B.    Defendants' Scheme was Designed to Maximize Their Financial Gain

168.    Defendants targeted Lidocaine 4.5%-Menthol 5% transdermal pain patches to be the Lidothol Patches routinely prescribed pursuant to the fraudulent scheme set forth herein because Liberty Chemists could readily purchase them at a low cost but bill out the Lidothol Patches at egregiously high wholesale prices based on the Pharmacy Fee Schedule.

169.    Pursuant to the Pharmacy Fee Schedule governing topical pain products, Liberty Chemists was entitled to the average wholesale price (AWP) minus 12% (for brand name drugs) or 20% (for generic drugs), together with a nominal dispensing fee.

170.    In connection with Liberty Chemists' request for reimbursement from Plaintiffs, Liberty Chemists typically submitted an NF-3 form, which included the purported NDC numbers and corresponding charges for each drug product dispensed.

171.    The NDC numbers listed on the NF-3 form submitted by Liberty Chemists are what identified the purported AWPs for each of the Lidothol Patches that Liberty Chemists purported to dispense.

172.    Defendants never submitted wholesale purchase invoices to Plaintiffs demonstrating how much Liberty Chemists actually paid the suppliers for Lidothol Patches, or whether Liberty Chemists actually purchased the pharmaceuticals with the NDC numbers listed in the billing submissions.

173.    On information and belief, the illegal kickback and referral arrangements Defendants entered into with Prescribing No-fault Clinics, Clinic Controllers and prescribing providers targeting Lidothol Patches were motivated by profit maximization rather than genuine patient care.

174.    Defendants' activities described herein with respect to the Lidothol Patches, which were prescribed pursuant to a fraudulent scheme and pursuant to illegal, collusive kickback arrangements, promoted and facilitated other acts that imposed foreseeable costs onto Plaintiffs, including, but not limited to, Plaintiffs' expenditures for verifying each fraudulent claim through examinations under oath, associated attorneys' and court reporting fees, IMEs, and peer reviews.

## DISCOVERY OF THE FRAUD

175.    To induce Plaintiffs to promptly reimburse their claims for the Lidothol Patches, Defendants have gone to great lengths to systematically conceal their fraud.  By way of example and not limitation:

- Zafarani, through Liberty Chemists, routinely and deliberately submitted facially valid claims for reimbursement that were based on a pre-determined protocol of treatment without regard for medical necessity;

- Zafarani, through Liberty Chemists, routinely and deliberately concealed that its No-fault claims were submitted pursuant to an unlawful referral, illicit kickback and/or other financial compensation arrangement between and among one or more of the Defendants and the No-fault Clinics in order to maximize reimbursement; and/or

- Zafarani, through Liberty Chemists, knowingly misrepresented and concealed that Liberty Chemists' claims for reimbursement were based on a pre-determined protocol of treatment without regard for medical necessity

and were submitted pursuant to an unlawful referral, illicit kickback and/or other financial compensation arrangement between and among one or more of the Defendants and the No-fault Clinics in order to maximize reimbursement.

176.    Plaintiffs are under a statutory and contractual obligation to promptly and fairly process claims within 30 days. The documents submitted to Plaintiffs in support of the fraudulent claims at issue, combined with the material misrepresentations, omissions and acts of fraudulent concealment described above, were designed to, and did cause Plaintiffs to justifiably rely on them. As a proximate result, Plaintiffs have incurred damages of more than $88,000.00 based upon the fraudulent bill submissions.

177.    Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from Plaintiffs, Plaintiffs did not discover and should not have reasonably discovered the fraud until in or about June 2023. .

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

### AGAINST ZAFARANI, JOHN DOES 1 THROUGH 5, AND ABC CORPORATIONS 1 THROUGH 5

### (RICO, pursuant to 18 U.S.C § 1962(c))

178.    The allegations of paragraphs 1 through 177 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

179.    From in or about December 2021 through the filing of this Complaint, Defendant Zafarani and one or more of the John Does 1 through 5 and ABC Corporations 1 through 5 conducted and participated in the affairs of the Liberty Chemists enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein and in the

representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

180.    At all relevant times mentioned herein, Defendant Zafarani participated in the affairs of the Liberty Chemists enterprise through continuing a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs that were based, in part, on the dispensing of pharmaceutical products, including but not limited to Lidothol Patches, (i) pursuant to an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) were the product of illegal and/or invalid prescriptions issued pursuant to collusive agreements.

181.    One or more of the John Does 1 through 5 and one or more of the ABC Corporations 1 through 5 participated in the scheme by ensuring that the No-Fault Clinics provided the Liberty Chemists enterprise with a steady and ample supply of fraudulent prescriptions for medically unnecessary "pain relieving" pharmaceutical products, including Lidothol Patches, based on illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics or Clinic Controllers, as well as bogus documentation, that misrepresented necessity of the pharmaceutical products to facilitate the fraudulent billing alleged in the Complaint.  One or more of the ABC Corporations furnished documents that Defendant Zafarani required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent pharmaceutical claims.

182.    It was both foreseeable and the intended consequence of the illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and

the No-fault Clinics or Clinic Controllers, that the bogus documentation provided by one or more of the John Does 1 through 5, through one or more of the ABC Corporations 1 through 5, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

183.    The racketeering acts set forth herein were carried out on a continued basis for more than a four-year period, were related and similar, and were committed as part of the ongoing scheme of Zafarani, one or more of the John Does 1 through 5, and one or more of the ABC Corporations 1 through 5, to fraudulently bill pharmaceutical products, including but not limited to Lidothol Patches, to defraud insurers and, if not stopped, will continue into the future.

184.    This pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as the Liberty Chemists enterprise continues to pursue collection on the fraudulent billing to the present day.

185.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Zafarani, with the knowledge and intent of one or more of the John Does 1 through 5 and one or more of the ABC Corporations 1 through 5, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce them to issue checks to Liberty Chemists NY, Inc. based upon materially false and misleading information.

186.    Through the Liberty Chemists enterprise, Zafarani submitted fraudulent claim forms seeking payment for pharmaceutical products, including but not limited to Lidothol Patches, that were dispensed (i) pursuant to an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical

necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) pursuant to collusive agreements that were the product of illegal and/or invalid prescriptions. The bills and supporting documents that were sent by and/or on behalf of Zafarani and/or others acting under his direction and control, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Zafarani, one or more of the John Does 1 through 5, and one or more of the ABC Corporations 1 through 5 engaged in a continuous series of predicate acts of mail fraud.

187.    A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by or on behalf of Zafarani in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

188.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

189.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

190.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Fire and Casualty Insurance Company have been injured in their business and property, in an amount in excess of $83,000.00, the exact amount to be determined at trial.

191.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs Allstate Insurance Company and Allstate Fire and Casualty Insurance Company are entitled to recover, from Zafarani, one or more of the John Does 1 through 5, and one or more of the ABC Corporations 1 through 5, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

## AGAINST LIBERTY CHEMISTS AND ZAFARANI

### (Common Law Fraud)

192.     The allegations of paragraphs 1 through 177 are hereby repeated and re-alleged as though fully set forth herein.

193.     Defendants Liberty Chemists and Zafarani intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, made numerous false and misleading statements of material fact as to the necessity and price of the pharmaceutical products which they purportedly dispensed, thereby inducing Plaintiffs to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Zafarani, Liberty Chemists made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment.

194.     Defendants Liberty Chemists and Zafarani intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiffs, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the dispensing of pharmaceutical products, including but not limited to the Lidothol Patches, were misrepresented.

195.     Defendants Liberty Chemists and Zafarani intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiffs, concealed the fact that the pharmaceutical products which they purportedly dispensed, including but not limited to the Lidothol Patches, were dispensed (i) pursuant to an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies

and dispensing of pharmaceuticals; and/or (iv) as the product of illegal and/or invalid prescriptions issued pursuant to collusive agreements.

196.    Defendants Liberty Chemists and Zafarani intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiffs, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profits and reimbursements of payments from Plaintiffs, as opposed to medical necessity.

197.    On information and belief, Defendants Zafarani, through Liberty Chemists intentionally, knowingly, fraudulently, and with the intent to deceive, submitted, or caused to be submitted to Plaintiffs, patient medical records, assignments of benefits, prescriptions, reports, treatment verifications and/or bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements that Liberty Chemists was dispensing Lidothol Patches, pursuant to legitimate New York State Prescriptions, when it was not;

- False and misleading statements that Liberty Chemists was billing Plaintiffs the maximum permissible charges under the No-fault Law for the Lidothol Patches, allegedly provided to Covered Persons, when it was not;

- False and misleading statements that Liberty Chemists was in conformance with core licensing requirements and entitled to receive No-fault benefits when in fact Defendants participated in collusive relationships with medical providers through which Defendant filled prescriptions pursuant to an illegal kickback and referral scheme for medically unnecessary pharmaceuticals;

- False and misleading statements as to why the Lidothol Patches, were medically necessary; and

- False and misleading statements regarding the availability of over-the-counter, FDA approved medications in lieu of Lidothol Patches that were purportedly provided by Defendants as part of a predetermined protocol of treatment.

198.    In numerous instances, the medical records, reports, prescriptions and bills submitted, or caused to be submitted, by Defendants Zafarani, through Liberty Chemists to Plaintiffs in connection with Defendants' requests for reimbursement contained false representations which were intended not only to defraud Plaintiffs but constituted a grave and serious danger to the Covered Persons and the consumer public.

199.    The foregoing was intended to deceive and mislead Plaintiffs into believing that Zafarani, through Liberty Chemists, was providing medically necessary Lidothol Patches, when, in fact, they were not.

200.    Defendants Liberty Chemists and Zafarani knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

201.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which they were led to believe as a result of Defendants' acts of fraud and deception.

202.    Had Plaintiffs known of the fraudulent content of, and misrepresentations within the documentation and bills, submitted to them, Plaintiffs would not have paid Liberty Chemists for claims for No-fault insurance benefits submitted in connection therewith.

203.    Furthermore, Defendants Liberty Chemists and Zafarani's far-reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

204.    By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount in excess of $88,000.00, the exact amount

to be determined at trial, plus interest, costs, punitive damages, and other relief the Court deems just.

## THIRD CLAIM FOR RELIEF

## <u>AGAINST DEFENDANTS LIBERTY CHEMISTS AND ZAFARANI</u>

### (Unjust Enrichment)

205.    The allegations of paragraphs 1 through 177 are hereby repeated and re-alleged as though fully set forth herein.

206.    By reason of their wrongdoing, Defendants Liberty Chemists and Zafarani have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Plaintiffs that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

207.    Plaintiffs are therefore entitled to restitution from Defendants Liberty Chemists and Zafarani in the amount by which they have been unjustly enriched.

208.    By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount in excess of $88,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FOURTH CLAIM FOR RELIEF

## <u>AGAINST LIBERTY CHEMISTS</u>

### (Declaratory Judgment under 28 U.S.C. § 2201)

209.    The allegations of paragraphs 1 through 177 are hereby repeated and re-alleged as though fully set forth herein.

210.    At all relevant times mentioned herein, each and every bill mailed by Zafarani, through Liberty Chemists, to Plaintiffs, sought reimbursement for medically unnecessary "pain

relieving" pharmaceutical products, including Lidothol Patches and a limited variety of other oral medications.

211.    At all times relevant herein, Defendants Liberty Chemists and Zafarani exploited the No-fault Law through the utilization of various deceptive billing tactics engineered to maximize the amount of reimbursement from insurers, in general, and Plaintiffs, in particular, through the submission of fraudulent billing pursuant to an unlawful kickback/referral arrangement.

212.    At all relevant times mentioned herein, each and every bill mailed by Liberty Chemists to Plaintiffs sought reimbursement for Lidothol Patches, that were dispensed: (i) pursuant to an illegal kickback scheme and/or in exchange for other financial incentives; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) pursuant to collusive agreements and the product of illegal and/or invalid prescriptions.

213.    Because Liberty Chemists engaged in the conduct alleged herein, Plaintiffs seek a declaration that they are not required to pay any of Liberty Chemists' claims for Lidothol Patches, which were dispensed pursuant to the scheme to defraud alleged herein.

214.    As the Defendants have knowingly made the foregoing false and fraudulent misrepresentations about the pharmaceuticals purportedly provided to Covered Persons and the amounts they were entitled to be reimbursed, it is respectfully requested that this Court issue an order declaring that Liberty Chemists is not entitled to receive payment on any pending, previously-denied and/or submitted unpaid claims and Plaintiffs, therefore, are under no obligation to pay any of Liberty Chemists' No-fault claims.

215.     The Defendants will continue to seek reimbursement from Plaintiffs for their false and fraudulent claims absent a declaration by this Court that Plaintiffs have no obligation to pay the pending, previously denied and/or submitted unpaid claims, regardless of whether such unpaid claims were ever denied, regardless of the purported dates of service.

216.     Plaintiffs have no adequate remedy at law.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs demand judgment as follows:

i)      Compensatory damages, in an amount in excess of $88,000.00, the exact amount to be determined at trial, together with prejudgment interest;

ii)     Punitive damages in such amount as the Court deems just;

iii)    Treble damages, costs and reasonable attorneys' fees on the First Claim for Relief, together with prejudgment interest;

iv)     Compensatory and punitive damages on the Second Claim for Relief, together with prejudgment interest;

v)      Compensatory damages on the Third Claim for Relief, together with prejudgment interest;

vi)     Declaratory relief on the Fourth Claim for Relief declaring that Plaintiffs have no obligation to pay any of Defendant Liberty Chemists' unpaid claims for Lidothol Patches, whether pending, previously denied and/or submitted, regardless of whether such unpaid claims were ever denied, and regardless of the purported dates of service; and

vii)    Costs, reasonable attorneys' fees and such other relief that the Court deems just and proper.

Dated: New York, New York,
      September 17, 2024

                          MANNING & KASS, ELLROD, RAMIREZ,
                          TRESTER LLP

                By:  /s/  Lee Pinzow
                    Robert A. Stern
                    James A. McKenney
                    Kristy R. Eagan
                    Lee Pinzow

                    100 Wall Street, Ste 700
                    New York, New York 10005
                    (212) 858-7769

                    *Attorneys for Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>                             **Plaintiffs,**<br><br>       -against-<br><br>MATRIX HEALTH CORP D/B/A LIBERTY CHEMISTS, SARAH ZAFARANI, JOHN DOES 1 THROUGH 5, AND ABC CORPORATIONS 1 THROUGH 5,<br><br>                             **Defendants.** | CIVIL ACTION<br><br>24-CV-6546<br><br>COMPLAINT<br><br>(JURY TRIAL DEMANDED) |

# COMPLAINT

MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS FOR PLAINTIFFS
100 WALL STREET, SUITE 700
NEW YORK, NEW YORK 10005
TELEPHONE: (212) 858-7769